CHARLES H. SMITH, adm'r, *et al.*, plaintiffs in error. *vs.* ANNA E. SMITH, defendant in error.

When the widow of an intestate, elects after a fair and public sale of his lands, to take an amount of money *absolutely* in lieu of his dower therein, as provided by the 1761 section of the Code: *Held*, that the amount of the sale of the land at such public sale, is *conclusive* evidence of the value thereof, and that the widow is entitled to have her dower estimated out of the proceeds of such sale, from the death of her husband, and the value of her life-estate estimated from that time during her life.

Dower. Tried before Judge POPE. Floyd Superior Court. March Term, 1869.

William R. Smith died in May, 1864, leaving his widow, Anna E. Smith, surviving him. In August, 1866, commissioners appointed to assign her dower, assigned to her four lots of land embracing the homestead, to-wit: Numbers 233, 248, 273 and 288, in the 23d district and 3d section of Floyd county, for life, or in lieu thereof, absolutely, $12,000, if she preferred it. She elected to take the money. The administrators of N. N. Smith, deceased, and Daniel S. Printup, creditors of said William R. Smith, resisted this assignment, and it was set aside for irregularity. See 36 Ga. R., 620.

Commissioners again undertook to fix the amount due her absolutely, in lieu of dower, and put it at $15,000. The same creditors objected to this allowance, and formed an issue as to its fairness, etc. At the trial, it was agreed that the jury should, by their verdict, fix the sum, to be paid her in lieu of her dower.

It was admitted that the widow was seventy-one years old in September, 1868, and it was agreed that the Northampton mortuary tables might be read, without proof, from "Reese's Manual." The objectors read in evidence, said mortuary tables, and the sale-bill, which showed that at different dates, from the 6th of March till the 2d of October, 1866, the lands of said William R., were sold, and brought in the aggregate, $46,745, and that at these sales the widow bought as follows:

March 6th. Lot Number 7, Etowah Division,
Rome, at..............................................$1,000 00
March 6th. Lot Number 8, Etowah Division,
Rome, at.................. ..........................$ 340 00
August 7th. Sixty acres of Number 246, 23d
District, 3d Section.................... ................$4,800 00
August 7th. Six acres of Number 246, 23d
District, 3d Section...............................$1,650 00

For the widow the evidence was as follows: Mr. PER-KINS testified that William R. Smith died, owning thirteen lots of land, and some fractions, the whole lots containing one hundred and sixty acres, and some of them more. Of this, four hundred acres was cleared, and one-third bottom land; the upland is now worth $20 00 and the bottom land $50 00 per acre. At least one hundred acres of No. 246 is worth $100 00 per acre. He owned also six acres of city lots, now worth $1000 00 per acre, and Nos. 7 and 8, Etowah Division, improved, and now worth $4000 00; considering the timber, the timbered bottom is now worth $150 00 per acre, etc. Upon cross examination, he said that he was the widow's son, represented her at the sale, and bought some of the land for her; that the sale was fair, the widow consenting to it; the administrator stated, at the sale, that purchasers would get the land free from dower, and the widow bought said lands, expecting to pay for them out of her allowance in lieu of dower. She lived at the homestead till January 1867, and since that on the lands so bought by her.

CHARLES H. SMITH testified that the two thousand acres of land owned by William R., were appraised at $90,000 00, which he thought was a fair appraisement; that at the time of the sale there was great depression, and since the sale, many circumstances occurred to make the land very valuable, some of it near the city of Rome, bought by other parties, had been laid off into lots, and was selling at $400 00 and some at $200 00 per acre; all the land is now worth from $120,-000 to $150,000. Cross-examined, he said the sale was fair and legal in every particular; the widow was present by her son, consented to the sale, and bought some of the

land, and that the value of the land had been greatly enhanced since the sale, by causes arising since the sale.

One of her counsel testified that the lands originally assigned the widow were now worth $40 00 per acre, and that the remainder in them (after her dower estate) would not have sold for over $1,000 00; that the principal sale occurred in the fall of 1866, and to encourage bidding for the lands, N. N. Smith was present, waived his mortgage lein, and the widow authorized an announcement that the lands would be sold free from dower. At the October sale, Cothran and Sproul bought Nos. 233 and 243, at $5,700. SPROUL testified that his purchase was $3,200 worth, at $18 50 per acre, that he sold some of it on a credit for $125 per acre, and considered his whole purchase now worth $10,000, or $50 per acre. He said he gave for it what it was worth at the time of the sale.

In rebuttal, the objectors read in evidence the assessment of August, 1866, for the purpose of showing the former assessment. There was some evidence that some improvements had been put on the lands since the sale, such as buildings.

After argument the Court charged the jury, that "in estimating the amount of money to be allowed Mrs. Smith, in lieu of her dower, the amount the land brought at administrator's sale is not conclusive, and you are allowed to consider all the testimony before you on that subject," etc., and as he was about to conclude, counsel for objectors, handed him the following written request to charge : "The jury can not estimate the increase of the land since its sale, arising from causes since the sale." At the time counsel presented this request he stated that the substance of the request had already been charged. On reading the request, not audibly, the Judge overlooked the words "arising from causes since the sale." He then charged the jury substantially as he had before, to-wit: "In estimating the amount of money which the widow ought to have, you cannot consider the increase in value or the enhancement in price of the land arising from any extraneous causes, such, for instance, as the improvements which some of the witnesses stated had been made on the

land since the sale, nor from any causes whatsoever, other those inherent in the land itself, and constituting part of its real value at the time of the sale," but he did not charge as requested. The jury allowed the widow, in lieu of her dower in the lands, $15,000 absolutely.

The objectors moved for a new trial upon the ground that the charge of the Court was erroneous, that his refusal to charge, as requested, was error, and because the verdict was contrary to the evidence, etc. The Court refused a new trial, and error is assigned on each of said grounds.

B. H. HILL, for plaintiff in error, said the widow could only get her allowance out of the proceeds of the sale: Code, sections 1760, 1761 ; and if this sale was fair, it is conclusive, Code, section 2577 ; the Court should have charged as requested : 30 Ga. R., 102.

E. N. BOYLES, for defendant, replied that the jury having acted *by consent*, their verdict was final; that the sale was not conclusive as to value: 26 Ga. R., 207. He said the charge was substantially as requested, and therefore, no error was committed by the omission: 12 Ga. R., 293 ; 14th, 286 ; that the request was ambiguous; that it was not the law: 4 Kent 67 ; 3 Mason 371-7; as to the charge about improvements he cited 26 Ga. R., 374; 18th, 693; 28th, 507 ; 15th, 205.

WARNER, J.

The question involved in this case is, whether the amount of the sale of an intestate's land sold at an administrator's sale, is conclusive evidence of the value of that land, as against the widow of such intestate, who elected to take an amount of money to belong *absolutely* to her in lieu of her dower in the land, as provided by the 1761th section of the Revised Code. The widow on the death of her husband was entitled to an estate for life, in one third of the lands according to valuation, of which the husband was seized and possessed at the time of his death. Code 1753. By the 1760th section of the Code it is declared, that " with the assent of the executor or administrator of the estate, the widow may elect

a *life-estate,* in one third part of the *proceeds of the sales of the land,* or any distinct tract or tracts of land, in lieu of the dower in such land.   In which event, such third part of the *proceeds of the sale* shall be invested by the executor or administrator, under the direction of the Ordinary, where his returns are made, and the annual income thereof paid to the widow during her life." By this section of the Code, the widow gets, if she so elects, the annual income of one third part of the proceeds of the sale of the land *during her life.* But by the 1761st section of the Code, it is provided, that " with the assent of the executor or administrator of the estate, and the approval of the Ordinary, the widow may elect in lieu of her dower, an amount of money to belong *absolutely* to her, to be estimated and determined by the commissioners appointed to assign dower, and whose report shall be subject to the same objections, as are admeasurements of dower in land.   Both before the Ordinary and on the return of the report of the commissioners, any person interested in the question, shall be allowed to become a party and be heard. The amount so awarded shall be paid in preference to all other claims out of *the proceeds of the sale of the land.*" The question made in this case arises under the latter section of the Code, the widow having elected to take an amount of money to belong *absolutely* to her, in lieu of her dower in the land.   This amount of money, when estimated and determined by the commissioners, is to be paid out of the *proceeds of the sale of the land.* The law provides the mode and manner, in which the land shall be sold, and when so, fairly and publicly, sold, the amount for which the land sold, at such fair and public sale, is *conclusive* upon the widow who has elected to take an amount in money, to belong to her absolutely, in lieu of dower, to be paid out of the *proceeds of the sale of the land.* Such sale, in our judgment, is the only proper and legal mode by which the value of the intestate's lands can be ascertained.   This provision of the Code, as well as the 1760th section, contemplates, that the land shall be *sold.* How sold ? Most unquestionably to be sold, as the law prescribes ; and when so sold, the widow is

Smith, adm'r, *et al.*, *vs.* Smith.

to have the money which she has elected to take, paid to her out of the proceeds of *that* sale.   The sale of the land, as provided by law, ascertains and determines the *value thereof*. The amount for which the intestate's land sold at such sale constitutes " the proceeds of the sale of the land."   And the widow is entitled to have her dower estimated out of the proceeds thereof, from the death of her husband, and the value of her life-estate estimated from that time during her life.

On the trial of the issue made between the parties in the Court below, the Court charged the jury among other things that "in estimating the amount of money to be allowed Mrs. Smith, in lieu of her dower, the amount the land brought at the administrator's sale is not conclusive, and you are allowed to consider all the testimony before you on that subject."   This portion of the charge of the Court, in view of the facts of this case was error.   The council for the objectors requested the Court in writing to charge the jury as follows :   " That the jury cannot estimate the increase of the value of the land since its sale, arising from causes since the sale," which request to charge, was refused.   In our judgment, the charge as requested, should have been given to the jury, and the Court below erred in not charging the jury as requested, as well as in the charge given to the jury in relation to this point in the case.

Let the judgment of the Court below be reversed.